UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MONROE J. TILLER, | Civil Action No.: 4:15-cv-04907-RMG-TER |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| -vs- | |
| CAROLYN W. COLVIN, Commissioner of Social Security; | |
| Defendant. | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability and disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I. RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff filed an application for DIB on May 8, 2012, alleging inability to work since May 11, 2012. (Tr. 81-82). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on July 1, 2014, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 30). The Administrative Law Judge (ALJ) issued an unfavorable decision on September 23, 2014, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 9-22). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on October 14, 2015, making the ALJ's decision the Commissioner's final

decision. (Tr. 1-4). Plaintiff filed this action on December 10, 2015.

**B.     Plaintiff's Background and Medical History**

    **1.     Introductory Facts**

Plaintiff was born January 8, 1961, and was fifty-one years old at the time of the alleged onset. (Tr. 148). Plaintiff completed his education through twelfth grade and has past relevant work experience as a textile supervisor, plumber's helper, and truck driver. (Tr. 180). Plaintiff alleges disability due to kidney carcinoma, diabetes type 1, thyroid, high blood pressure, stress, anxiety, high cholesterol, spinal stenosis, heart stints, vision problems, and back pain. (Tr. 81, 179).

    **2.     Medical Records and Opinions**

On May 2, 2011, Plaintiff had a heart attack and had stints placed. (Tr. 264-282, 286-87). In July 2011, Plaintiff was seen by James R. Story, M.D. of Cardiology Consultants, P.A.. Dr. Story noted that Plaintiff was stable on medication, his EKG was normal, and he was scheduled for a follow-up in a year. (Tr. 283-84).

On April 13, 2012, Plaintiff was seen by Carol A. Kooistra, M.D. for lower back pain. Dr. Kooistra's diagnosis was lumbar spondylosis and polyneuropathy. (Tr. 380-81). On May 2, 2012, Dr. Kooistra noted a lumbar MRI showed moderate to severe spinal stenosis at L34 and a mass on kidney. Dr. Kooistra noted uncertainty as to whether the back pain was caused by the kidney cancer or the spine issues. (Tr. 382).

In August 2012, Plaintiff had surgery to remove his left kidney. (Tr. 305-79). On August 27, 2012, Plaintiff was seen by Robert G. Britanisky, M.D. for a post-kidney operation office visit. Dr. Britanisky noted that Plaintiff was doing well and denied any significant pain or discomfort. Dr. Britanisky stated: "He can go back to work at the 6-week mark." (Tr. 401).

On October 9, 2012, Plaintiff had a consultative examination by Jeremy Burns, O.D. regarding Plaintiff's eyes. The examination noted: 20/20 vision with correction in right eye, 20/200 vision with correction in left eye, cataract, dermatocholosis, poor vision in left eye, no diabetic retinopathy, and no working conditions to be avoided. (Tr. 434-41).

On October 31, 2012, Plaintiff was seen by Kameron Klosterman, M.D. of Pacolet Family Medicine. Dr. Klosterman noted no chest pains, no medication side effects, no symptoms of hypothyroidism, and compliance with hypothyroid medications. Dr. Klosterman noted that Plaintiff poorly controlled his diabetes and needed to keep a diet, exercise, and sugar log. (Tr. 444-58).

On November 25, 2012, Plaintiff had a mental consultative examination with Caleb Loring, IV, Psy. D.. The examination noted: situational stress, no thought process problems, no significant social problems, and no concentration or memory problems. Plaintiff stated the medications helped and he had never been hospitalized for psychiatric reasons. Loring stated that Plaintiff walked abnormally and seemed to be in a moderate degree of pain. Loring concluded that Plaintiff would be capable of working at a job with public contact. (Tr. 459-61).

Records show history of cataract surgery on January 19, 2013. (Tr. 492). On January 21, 2013, a lumbar spine MRI performed due to low back pain revealed L3-4 severe spinal stenosis and L4-5 moderate spinal stenosis. (Tr. 462-65). Plaintiff was still experiencing back pain in February 2013. (Tr. 472). On February 13, 2013, Dr. Kooistra referred Plaintiff to a surgeon due to spinal stenosis. (Tr. 479-80).

On February 19, 2013, Dr. Britanisky noted Plaintiff's complaints of chronic back pain, numbness, and tingling. (Tr. 492-95).

On February 23, 2013, Plaintiff was seen by Robert Westrol, M.D., Pain Management

Associates. Plaintiff complained of moderate to severe lower back pain for eight months and the pain was exacerbated by stairs, walking, and lifting. Dr. Westrol noted moderate edema of lower legs and low back restricted in flexion, extension, and side bending. (Tr. 475-78).

On February 26, 2013, Dr. Westrol performed venous duplex bilateral screening exam and Plaintiff was positive for deep venous insufficiency. (Tr. 507-08). On March 19, 2013, Dr. Westrol noted Plaintiff had pain in lower back that worsened by stairs, walking, and lifting. (Tr. 509).

On March 29, 2013, Plaintiff had facet steroid injections into his spine by Jeffrey P. Smith, M.D. (Tr. 502).

On April 15, 2013, Plaintiff was seen by Timothy R. Monroe, M.D. with symptoms of low back pain, leg pain, and swelling. Dr. Monroe planned decompression and instrumented fusion surgery. (Tr. 498-99). On May 30, 2013, Plaintiff had decompression and fusion surgery. (Tr. 513-17).

On November 4, 2013, a scan of Plaintiff's right kidney revealed a soft tissue nodule that was stable but had first appeared on August scan. (Tr. 522, 526). On November 14, 2013, Dr. Kooistra noted that Plaintiff's back pain was "way better than prior to surgery," but that he still had issues on his right side and was still using prescription pain medication. (Tr. 530-31).

On December 2, 2013, Plaintiff was seen by Dr. Monroe for six-month post-operation follow-up. Dr. Monroe noted that Plaintiff had shown improvement in activity level and symptoms and his musculoskeletal assessment was normal in motor and strength. (Tr. 537-38).

On March 5, 2014, Dr. Smith noted Plaintiff had pain for years in back, legs, and hips that was aggravated by daily activities. Dr. Smith stated surgery helped but Plaintiff was unable to return to his previous job. Dr. Smith noted: "Pain well controlled on current medication regimen.

Medications allow patient to stay active." (Tr. 582-83).

On March 13, 2014, Plaintiff was seen by Dr. Kooistra "for his chronic pain attributed to polyneuropathy and lumbar spine disease." Plaintiff was prescribed Norco through his pain management doctor, and Dr. Kooistra noted Plaintiff no longer needed appointments while he was seeing Dr. Smith. (Tr. 586).

On May 19, 2014, Plaintiff was seen for his one year post-operation follow-up by Dr. Monroe. Dr. Monroe noted Plaintiff's postoperative pain had been mild and Plaintiff works with pain management physician. Dr. Monroe stated no more regular follow-ups were needed. (Tr. 596-97).

All three doctors, Dr. Klosterman(family medicine), Dr. Kooistra(neurologist), and Dr. Smith(pain management) filled out a questionnaire created by Plaintiff's attorney. All three doctors indicated: Plaintiff required a cane to ambulate; Plaintiff's condition would cause him to take more than three breaks in a workday and miss three or more days in a month; and Plaintiff's conditions limited his ability to work and the limitations lasted at least twelve months. Dr. Klosterman noted Plaintiff's pain would frequently be severe enough to interfere with work tasks; Dr. Kooistra and Dr. Smith noted constantly for the same item. For conditions supporting the answers checked, Dr. Klosterman noted severe uncontrolled diabetes, renal cancer, and peripheral neuropathy requiring cane use. For conditions supporting the answers checked, Dr. Kooistra noted lumbar spinal stenosis and spondylosis. For conditions supporting the answers checked, Dr. Smith noted decreased lumbar range of motion and an additional unreadable diagnosis. (Tr. 579-80, 585).

5

**C.    The Administrative Proceedings**

   **1.    The Administrative Hearing**

       **a.    Plaintiff's Testimony**

On July 1, 2014, Plaintiff appeared with his attorney at a hearing before ALJ Harold Chambers.  Mr. Robert Brabham testified as an impartial vocational expert (VE). (Tr. 30).

Plaintiff testified that he completed high school and last worked for thirteen years for a textile company as manager of the plant. (Tr. 32).  After Plaintiff recovered from his heart attack in May 2011, Plaintiff went back to work and his doctor cleared him to do so.  Plaintiff stated he did not have the energy he had before. (Tr. 34, 40).  Plaintiff stopped working because he had back issues and kidney cancer was found after scans. (Tr. 35).  Plaintiff had back surgery in May 2013 and had some improvement as a result. (Tr. 36).  Plaintiff stated that before the surgery he had gotten to where he could not walk anymore. (Tr. 36).  Plaintiff still has back pain and leg pain. (Tr. 37). Plaintiff had been lifting fifty pounds in his prior job. (Tr. 39).

When asked by the ALJ why Plaintiff said he became disabled in May 2012, Plaintiff answered kidney cancer. (Tr. 40).  Plaintiff had two kinds of back pain: kidney and spinal stenosis. (Tr. 41).  Plaintiff testified that it was difficult to distinguish the pain. (Tr. 42).  Plaintiff recovered from the kidney surgery after two months. (Tr. 43).  Plaintiff indicated his spine surgery helped with the stenosis problem. (Tr. 43).  Polyneuropathy, sleep apnea, and anxiety continued to be a problem (Tr. 43-44).  The ALJ questioned Plaintiff's attorney about his concerns of functional limitations over a length of time and multiple surgeries that seemingly helped Plaintiff. (Tr. 47-48).

After recovery from the spine surgery, Plaintiff could not sit for long, could stand for a few minutes with his cane, could walk 100 feet with his cane, and would have to elevate his feet

throughout day. Plaintiff testified that he would have more than three days a month that he would miss work if he had a job folding towels. (Tr. 50). Plaintiff had a lack of feeling in his hands. (Tr. 51). Plaintiff stated he has to use two hands to handle a gallon of milk and he is not able to bend over and pick anything up. Plaintiff's pain in his legs is "pretty much all the time." He washes dishes occasionally. Plaintiff has problems keeping his diabetes in control. (Tr. 53-54). Plaintiff testified that his records noted improvement after surgery because he could not walk prior to surgery and now he can walk but he still has pain. (Tr. 55). Plaintiff has vision problems. (Tr. 56).

Plaintiff's attorney created forms that three doctors filled out regarding functional limitations. (Tr. 59). The ALJ noted the form did not ask what work Plaintiff was capable of and did not list other possible exertional levels. (Tr. 60).

The ALJ questioned Plaintiff about his right kidney. (Tr. 63). Plaintiff's attorney stated that they are not asserting that Plaintiff is disabled because of kidney cancer. (Tr. 64). The ALJ pointed out that the primary care doctor relied on the kidney cancer diagnosis in support of her functional limitation assessment. (Tr. 64).

### b.     Vocational Evidence

The VE opined that an individual of Plaintiff's age, education, and prior work experience— who was limited to the ability to lift up to 15-20 pounds occasionally and 10 pounds frequently, could stand or walk four hours in a workday, could sit for 4-6 hours in a workday with allowed normal breaks, could occasionally use upper extremities to perform push or pull operations, could occasionally use foot controls, cannot climb ladders, ropes or scaffolds, can occasionally climb ramps or stairs, can frequently balance, can occasionally stoop, cannot crouch, can occasionally kneel and crawl, must avoid exposure to extreme cold and excessive vibration, and can perform routine

tasks—could not perform Plaintiff's prior work. (Tr. 69-71).

The VE opined that the hypothetical did not permit the full range of light work because of the amount of walking and weight. The VE opined there were jobs that happened to be unskilled that met the hypothetical limitations. Possible jobs would be assemblers, general packers, and machine operators. The ALJ further asked if the hypothetical person needed more than three breaks a day and missed more than two days a month of work would those limitations preclude competitive work at all exertional levels. The VE answered yes. (Tr. 73-75).

In closing, the ALJ again questioned Plaintiff's attorney in regard to the three treating physician opinions dated December 30, 2013, March 5, 2014, and January 7, 2014. The attorney answered that Dr. Klosterman opined about the degenerative nature of spinal stenosis. (Tr. 77-78).

**2.    The ALJ's Decision**

In the decision of November 6, 2014, the ALJ made the following findings of fact and conclusions of law (Tr. 15-23):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since May 8, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease, lumbar degenerative disc disease and spondylosis, diabetes mellitus with peripheral neuropathy, venous insufficiency, generalized anxiety disorder, mood disorder, and history of renal carcinoma (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift up to fifteen pounds occasionally, lift or carry up

        to ten pounds frequently, stand or walk for four hours of an eight-hour workday, sit for four-to-six hours in an eight-hour work day; he can occasionally use the upper extremities for pushing and pulling, bilaterally; he can occasionally use the lower extremities to operate foot controls, bilaterally; he cannot crouch or climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can frequently balance; he can occasionally stoop, kneel, and crawl; he should avoid concentrated exposure to extreme cold; and he should avoid even moderate exposure to vibration and hazards such as unprotected heights and dangerous machinery. The work he can perform is limited to routine tasks with no fast-paced production rate work or fast-paced work.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on January 8, 1961 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from May 8, 2012, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues that the ALJ erred in his decision, and that reversal and remand are appropriate in this case. Plaintiff argues the ALJ erred in his analysis of Plaintiff's credibility when the ALJ's findings relied on an erroneous statement that Plaintiff drew unemployment benefits. Plaintiff also argues that the ALJ failed to consider and/or give any weight to three treating physician's questionnaires in regard to limitations of more than three breaks a day and more than

three missed days of work a month. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

## A.     LEGAL FRAMEWORK

### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S.

whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*,

---

521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### B. ANALYSIS

**Credibility**

Plaintiff argues that the ALJ erred when he relied on erroneous facts regarding

unemployment benefits when analyzing Plaintiff's credibility.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. *See also* 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96–7p, 61 Fed. Reg. 34483–01, 34484–85. Additionally, "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994).

The ALJ found at step one that Plaintiff had medically determinable impairments capable of producing the symptoms Plaintiff alleged, and thus, the ALJ proceeded to step two. (Tr. 84).

A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id*.

The ALJ may choose to reject a claimant's testimony regarding her pain or physical condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs*., 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)).

13

"The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 61 Fed. Reg. at 34486.

Here, the ALJ noted the following in his decision:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

While it is clear that the claimant's symptoms have been significant, the record does not establish that they are so debilitating as to preclude all gainful employment. His alleged limitations are rather extreme, and the medical evidence does not demonstrate functional limitations consistent with the degree of physical impairment he describes. His heart attack was well before the alleged onset date, and he testified that he was able to return to work after approximately one month. Although he described his stamina as reduced, he reported working full time for several months afterward, during which he was on his feet most of the day and was lifting fifty pounds or more on occasion. He has had no treatment for coronary artery disease during the period under consideration aside from routine monitoring and medication refills. He has not reported any further cardiac symptoms to his treating physician, and he denied any related problems when he saw his cardiologist for surgical clearance. (Ex. 9F). Similarly, he underwent successful surgical treatment for renal cancer in early 2012 and has had no complications from the surgery or recurrence of the cancer. (Ex. 19F, 23F). He was released to return to work six weeks after the surgery (Ex. 8F) and by his own estimation took only two months or so to recover. He has required no further treatment aside from monitoring of a soft tissue nodule on his right kidney. His diabetes has been poorly controlled, but his treatment records reflect that this has been attributable in large part to his inconsistent compliance with medication, his failure to keep logs of his blood glucose readings as he was repeatedly instructed, and his poor adherence to his doctor's dietary recommendations. (Ex. 10F, 13F, 26F). He has no diabetic retinopathy (Ex. 12F), and despite his poor compliance with treatment and lifestyle modification, his medical records do not document diabetic nephropathy, gastroparesis, chronic nonhealing wounds, cognitive impairment, or end organ damage. His electrodiagnostic testing does reflect polyneuropathy in both lower extremities, and he has had diminished sensation in the feet at times (Ex. 6F, 13F). His venous duplex testing also reflects lower extremity venous insufficiency

> (Ex. 2IF). Still, his medical records contain little evidence of impairment from a functional standpoint.
>
> ... [further discussion of Plaintiff's medical history]
>
> The claimant describes his daily activities as fairly limited, but these allegations cannot be objectively verified with any reasonable degree of certainty. Even if his daily activities are truly as limited as he claims, it is difficult to attribute that degree of limitation to his medical condition rather than other contributing factors, in view of his significant improvement with appropriate medical treatment. **It is further noted that the claimant received unemployment compensation during the period under consideration. In order to be eligible for unemployment compensation, an individual must certify under oath that he is ready and willing to work and is actively seeking employment. Although receipt of unemployment compensation does not preclude receipt of disability or Supplemental Security Income payments, the fact that an individual certifies under <u>oath to one governmental agency that he is ready and able to work and to another that he is disabled can impact his overall credibility</u>**. Overall, the claimant's allegedly limited daily activities are outweighed by the <u>other factors discussed in this decision</u>. I am persuaded that the claimant could tolerate a limited range of light work with postural and environmental restrictions as described above.

(Tr. 16-17) (emphasis added).

Defendant admits that the fact of receipt of unemployment benefits found and relied on by the ALJ was erroneous as Plaintiff had not received unemployment benefits and argue it was harmless error. (ECF No. 12 at 21). The ALJ did not specify to what extent which parts of his credibility discussion he relied on and what weight he valued different facts in making the determination that Plaintiff was not credible. The Defendant urges the court to find that the error was harmless because it is preceded by the phrase "it is further noted" and argues that such a phrase indicated that the unemployment benefits discussion was a factor that was not determinative in the credibility analysis. It is not this court's function to speculate as to the ALJ's phrasing in determining the amount of reliance the ALJ placed on the erroneous facts. *See Vitek*, 438 F.2d at 1157-58.

Remand is necessary for the fact finder to analyze the issue of Plaintiff's credibility without any reliance on erroneous facts. Proper development of the record as set out above may have a significant impact on the Commissioner's determination of the RFC and on the availability of work for Plaintiff in the national economy at Step Five. Therefore, this court will not address any issues in the remaining steps in the sequential evaluation.

The court cannot conduct a proper review based on the record. Accordingly, this action is remanded to the Commissioner for the ALJ to conduct an appropriate analysis regarding Plaintiff's credibility. Further, if necessary, the Commissioner should reevaluate the Plaintiff's RFC and additional VE testimony, as well as address the remaining allegations of error asserted by Plaintiff.

### III. CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is recommended that the Commissioner's decision be reversed and that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

December 8, 2016  
Florence, South Carolina